UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RODNEY S. PERRY, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-03519-JMS-TAB |
| ) | |
| PAUL TALBOT, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

Rodney Perry is a diabetic inmate at Pendleton Correctional Facility (PCF). In this civil rights action, Mr. Perry alleges that the defendants knowingly failed to ensure that he could receive his morning insulin injections for a period beginning July 9, 2019.

One defendant, Dr. Paul Talbot, seeks summary judgment on the basis that Mr. Perry failed to exhaust available administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). However, the record shows that the prison staff prevented Mr. Perry from completing all the steps necessary to exhaust the administrative process. Accordingly, the Court **denies** Dr. Talbot's motion for summary judgment, dkt. [31], and directs him to **show cause** why the Court should not enter summary judgment for Mr. Perry on the exhaustion issue.

**I. Legal Standards**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

In accordance with Local Rule 56-1(f), the Court assumes that facts properly supported by the movant are admitted without controversy unless the nonmovant specifically disputes them. Likewise, the Court assumes that facts asserted by the non-movant are true so long as they are supported by admissible evidence. S.D. Ind. L.R. 56-1(f)(2).

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the

2

time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the movant, Dr. Talbot bears the burden of establishing that the administrative remedies upon which he relies were available to Mr. Perry. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. The Offender Grievance Process

In July 2019, the Indiana Department of Correction (IDOC) maintained an Offender Grievance Process (OGP). Dkt. 33-2. The OGP permitted inmates to seek resolutions to numerous issues, including "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care." *Id.* at § IV(A). No exception is provided for concerns relating to medical care. *Id.* at § IV(B). To exhaust the remedies available through the OGP, an inmate must complete four steps. *See id.* at §§ X–XIII.

As the first step, an inmate must attempt to resolve his concern informally by discussing it "with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs." *Id.* at § X. An inmate must

3

document his attempt to resolve the complaint informally. *Id.* He may do so by completing a "Request for Interview" form. *Id.*

If the inmate is unable to achieve a satisfactory informal resolution, he must proceed to the second step and submit a formal grievance. *Id.* at § XI. A formal grievance must be presented on State Form 45471. *Id.* Additionally, each formal grievance must meet the following eight criteria:

1. Each part of the form shall be completed;

2. It shall be written legibly;

3. It shall avoid the use of legal terminology;

4. It shall raise the same issue that the offender raised in trying to get the informal resolution and document the attempts at informal resolution;

5. It shall relate to only one event or issue;

6. It shall be signed, dated, and submitted by an offender on his or her own behalf, although it can be written by another offender or staff member if the offender is unable to do so due to a physical, language, or other problem;

7. It shall explain how the situation or incident affects the offender; and,

8. The offender shall suggest appropriate relief or remedy.

*Id.* at § XI(A).

If the inmate fails to satisfy any of these eight criteria, the Offender Grievance Specialist (OGS) may reject the grievance and return it unfiled instead of ruling on the grievance. *Id.* at § XI(B). The OGS must return the rejected grievance form to the inmate with a written explanation, using State Form 45475, stating "why the form was returned and how it may be corrected." *Id.* The inmate must then revise the grievance form and return it to the OGS within five business days. *Id.*

The OGS must provide a written response to the inmate within 15 business days after receiving a properly submitted grievance. *Id.* at § XI(C). If an inmate is not satisfied with the OGS's response, he must proceed to the third step and file a grievance appeal. *Id.* at § XII. Within five business days after receiving the OGS's response, the inmate must complete a grievance appeal

4

on State Form 45473 and return it to the OGS. *Id.* Within one business day, the OGS must forward the grievance appeal and all relevant documents to the warden or his designee for review. *Id.* The warden or his designee must respond within five business days of receipt. *Id.*

Finally, if the inmate is not satisfied with the warden's response, he must appeal further to the IDOC's Offender Grievance Manager (OGM). *Id.* at § XIII. An inmate completes this second-level appeal by checking a "Disagree" box on the grievance appeal form returned by the warden and returning it to the OGS within five business days of receipt. *Id.* The OGS must forward the appeal to the OGM within two business days. *Id.* The OGM must respond in writing within ten business days, or the appeal is considered denied. *Id.*

### III. Mr. Perry's Grievances

Mr. Perry has presented documentary evidence of two separate efforts to exhaust the OGP and obtain access to insulin in July 2019. *See* dkt. 39 at 30-39. Dr. Talbot has not objected to the admissibility of these documents. Moreover, he has not provided competing documentary evidence of Mr. Perry's efforts to exhaust.[1] Accordingly, the Court accepts the facts illustrated by these documents as true for purposes of Dr. Talbot's motion. S.D. Ind. L.R. 56-1(f)(2).

**A.   First Attempt**

On July 15, 2019, Mr. Perry wrote a request for interview addressed to Lieutenant Bynum. Dkt. 39 at 30. The request stated, "I'm requesting that you have me placed on your unit E-1 for A.M. diabetic shots because I have continuously not being let out for my A.M. insulin shot." *Id.* Lieutenant Bynum did not respond. *Id.*; *see also id.* at 7, ¶ 11.

---

[1] Dr. Talbot has presented affidavit testimony discussing grievance documents, but neither his briefs nor the affidavit cite any documents. Accordingly, this testimony is inadmissible evidence of the contents of Mr. Perry's grievances. *See* Fed. R. Evid. 802 ("Hearsay is not admissible . . . ."), 1002 ("An original writing . . . is required in order to prove its content . . . .").

On July 22, Mr. Perry submitted a formal grievance raising the same issue. *Id.* at 32. OGS Christina Conyers rejected Mr. Perry's grievance. *Id.* at 34. She placed checkmarks next to two pre-printed explanations for the rejection. *Id.* One states, "There is no indication that you tried to informally resolve your complaint." *Id.* However, Mr. Perry attests that he attached his request for interview to the grievance form. *Id.* at 7, ¶ 12. The second explanation states, "This complaint seems to be submitted on behalf of another person or group." *Id.* at 34. However, Mr. Perry submitted his formal grievance in his own name and did not refer to any other inmate. *See id.* at 32.

It is not clear when Ms. Conyers returned Mr. Perry's grievance to him. The rejection form bears three dates: July 25, July 29, and August 7. Dkt. 39 at 34. Mr. Perry submitted a grievance appeal stating he received her response on July 24. *Id.* at 36. The appeal is dated July 25. *Id.* Ms. Conyers also returned the appeal without a ruling, stating, "Your appeal must be accepted, logged and filed prior to submitting an appeal." *Id.* at 38.

**B.    Second Attempt**

On July 22, 2019, Mr. Perry submitted a request for interview addressed to Dr. Talbot. Dkt. 39 at 31. It stated:

> I have constantly inform you that I am not being given my A.M. insulin at not fault of mine to be let out for A.M. diabetic insulin. I being deprived of being my insulin 2 Twice a day. Nor being able to check my blood glucose.

*Id.* Dr. Talbot did not respond. *Id.*; *see also id.* at 7, ¶ 11.

Mr. Perry then presented a formal grievance that he dated July 22, 2019, and that was stamped "RECEIVED" on July 23. *Id.* at 33. This grievance raised the same issue addressed in Mr. Perry's request for interview. *Id.*

Ms. Conyers also rejected this formal grievance. *Id.* at 35. To explain, she wrote, "All medical grievances are to be sent to HSA for the informal attempt to resolve. HCR's & doctors and nurses are not the appropriate person." *Id.*

This rejection also bears three dates: July 22, July 23, and August 7. *Id.* Mr. Perry submitted a grievance appeal dated July 25, 2019. *Id.* at 37. Ms. Conyers also rejected this appeal, stating, "Your grievance must be accepted, logged & filed prior to submitting your appeal." *Id.* at 39.

## IV. Analysis

Dr. Talbot's argument for summary judgment is brief and straightforward: "Plaintiff did not follow appropriate procedures to file a grievance, and did not file an appropriate appeal." Dkt. 32 at 6–7. The evidence, however, shows that Mr. Perry "properly followed procedure and prison officials were responsible for the mishandling of his grievance." *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006). As a result, "it cannot be said that [he] failed to exhaust his remedies." *Id.*

As to his first effort to exhaust, the evidence shows that Mr. Perry filed a formal grievance accompanied by documentation of an attempt to informally resolve his concern with Lieutenant Bynum. Dkt. 39 at 30, 32. Ms. Conyers rejected the grievance on grounds that it did not appear that he attempted to resolve his concerns informally and that he appeared to bring the grievance on behalf of another person. *Id.* at 34. But Mr. Perry's grievance and his request for interview show that neither was true. Alarmingly, Dr. Talbot maintains that summary judgment is warranted without acknowledging—much less attempting to reconcile—the glaring discrepancy between Ms. Conyers' rejection and the documentary evidence.

Ms. Conyers' rejection of Mr. Perry's second effort to exhaust and Dr. Talbot's reliance on that rejection are even more troubling. Ms. Conyers rejected Mr. Perry's second formal grievance

7

on grounds that "medical grievances are to be sent to HSA for the informal attempt to resolve" and because "doctors and nurses are not the appropriate person." Dkt. 39 at 35. Simply put, the OGP makes no such demand.

The OGP requires that an inmate attempt to informally resolve his concern "with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs." Dkt. 33-2 at § X. No provision in the OGP refers to an HSA, specifies a recipient for concerns related to medical care, or indicates that grievances regarding medical issues should proceed in a manner different from grievances regarding other issues. Mr. Perry wished to raise a concern about his access to medication, and he presented it to his doctor. Dr. Talbot makes no effort to identify a provision in the OGP that required Mr. Perry to present his concern to someone other than Dr. Talbot, nor does he attempt to explain why Dr. Talbot was not "the staff member responsible for the situation" or "the person in charge of the area where the situation occurs." *Id.*

Because Mr. Perry's request for interview to Dr. Talbot and his second formal grievance are both dated July 22, *see* dkt. 39 at 31, 33, it is unclear whether he properly sought informal resolution of his concerns before proceeding to the second stage. However, "a procedural shortcoming . . . amounts to a failure to exhaust only if prison administrators explicitly relied on that shortcoming." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). Ms. Conyers rejected Mr. Perry's second formal grievance on grounds that he failed to seek informal resolution *from the right person*—not that he failed to seek informal resolution. Accordingly, the Court cannot grant summary judgment on grounds that Mr. Perry failed to complete the first step before proceeding to the second.

8

Ms. Conyers rejected both of Mr. Perry's formal grievances for reasons inconsistent with the materials presented to her and the OGP. Mr. Perry did not complete every step of the OGP. But, without a decision on a formal grievance, he could not appeal to the warden. Dkt. 33-2 at § XII. Indeed, Ms. Conyers rejected Mr. Perry's grievance appeals for just this reason. *See* dkt. 39 at 38–39. And, without a decision from the warden, he could not appeal to the OGM. Dkt. 33-2 at § XIII. Ms. Conyers mishandled Mr. Perry's grievances, *see Dole*, 438 F.3d at 811, and rendered the OGP "so opaque that it bec[ame], practically speaking, incapable of use," *Ross*, 136 S. Ct. at 1859. Any administrative relief that Mr. Perry did not pursue was not actually available to him.

## V. Conclusion and Further Proceedings

"Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas*, 787 F.3d at 847. For the reasons discussed in Part IV above, Dr. Talbot has not established that the full administrative process was available to Mr. Perry. His motion for summary judgment, dkt. [31], is therefore **denied**.

In fact, the evidence shows that Mr. Perry pursued all administrative remedies under the OGP to the greatest extent allowed by the prison staff. Accordingly, the Court notifies Dr. Talbot that it intends to grant summary judgment in Mr. Perry's favor on the exhaustion defense. Dr. Talbot shall have **through August 17, 2020**, to respond to the Court's proposal and either (a) show cause why summary judgment should not be entered in Mr. Perry's favor, or (b) withdraw the affirmative defense of exhaustion.

**IT IS SO ORDERED.**

Date: 8/4/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

RODNEY S. PERRY, SR.
974441
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

J. Derek Atwood
INDIANA ATTORNEY GENERAL
derek.atwood@atg.in.gov

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Emily Kathleen VanTyle
CASSIDAY SCHADE LLP
evantyle@cassiday.com

Marilyn A. Young
CASSIDAY SCHADE LLP
myoung@cassiday.com